UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KEVIN BENLOSS,

              Petitioner,

    -against-

DAVID MILLER, SUPERINTENDENT
of the EASTERN CORRECTIONAL
FACILITY

              Respondent.
----------------------------------------------------------X
FEUERSTEIN, J.

04-CV-4780
(SJF)(MLO)

**OPINION & ORDER**

I. Introduction

*Pro se* prisoner Kevin Benloss ("Benloss" or "petitioner") petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to set aside a judgment of conviction issued on February 10, 2000 by the New York State Supreme Court, Suffolk County.

II. Background[1]

At approximately 4:00 a.m. on December 27, 1998, Gerber Cruz ("Cruz"), a driver for Via Taxi Cab Company, received a radio call to pick up two passengers in Amityville, New York. (Tr. 137). The passengers, both black males, instructed Cruz to make a stop on Harrison Avenue before driving them to North Amityville. (Tr. 140-44). The front seat passenger had a light

---

[1] The facts and procedural history are derived from the Jury Trial Transcript, Petitioner's Appellate Brief, and Respondent's Memorandum of Law in response to the habeas petition. Petitioner did not submit a Memorandum of Law in support of his petition.

1

mustache and wore a hood over his head. (Tr. 150, 219). Neither passenger instructed Cruz to stop as he drove down Harrison Avenue. (Tr. 148). At the end of Harrison Avenue, near Route 110, Cruz heard a click from the pocket of the front seat passenger, who told him to drive down Harrison Avenue again towards a cemetery. (Tr. 148-49). Cruz noticed that he was holding a revolver. (Tr. 150-52). When Cruz offered him money, the front seat passenger told him to proceed to the cemetery and pulled the microphone out of the radio that Cruz used to communicate with his dispatcher. (Tr. 152-54). With the gun pressed against his ribs, Cruz pushed his door open and jumped from the car, which was moving at approximately sixty-three (63) miles per hour. (Tr. 153-60). He rolled approximately twenty (20) feet. He walked to Brunswick Hospital with a broken wrist and dislocated shoulder. (Tr. 157-58).

The cab, which had previously been undamaged, was found later that morning on Harrison Avenue, where it was photographed by Detective Steven Diamond ("Diamond"). (Tr. 136, 256). Bullet holes were located in the passenger side of the car and the windshield was broken. (Tr. 257). Although Diamond recovered a bullet fragment from the front of the car, no latent fingerprints or expended bullets were found. (Tr. 258, 294, 330).

On January 20, 1999, the police arrested James Brewn ("Brewn"), an acquaintance of petitioner. (Tr. 347). Brewn informed police that on December 31, 1998, Kevin Harper, later discovered to be also known as Kevin Benloss, told him that he had robbed a cab in Amityville with another person, that the cab driver had jumped from the cab, and that they had "left some shots" in the cab. (Tr. 343-44, 356). Although Brewn also provided a written statement claiming that he had been pressured into implicating petitioner, he later testified at trial that the written statement was the result of stress and a desire to prevent further involvement in the matter. (Tr.

2

353, 361).

On January 21, 1999, Diamond arrested petitioner, who was later identified by Cruz on two occasions as the front seat passenger involved in the incident. (Tr. 166, 278). Petitioner was charged with one count each of attempted robbery in the second degree, attempted robbery in the first degree, criminal possession of a weapon in the second degree, assault in the second degree, and criminal mischief in the fourth degree. (Tr. 699).

At trial, Nicole Burden ("Burden"), petitioner's girlfriend and the mother of his son, testified that she was with petitioner the entire night of December 26, 1998 and that the two had watched "I Love Lucy" that evening. (Tr.436, 447). On cross-examination, the prosecution attempted to impeach Burden's testimony by using a television schedule not in evidence to prove that "I Love Lucy" was not broadcast on the evening of December 26, 1998. (Tr. 448). Upon petitioner's objection to the extrinsic evidence, the trial court initially allowed the questioning to continue, but then sustained the objection and instructed the jury to disregard the evidence. (Tr. 448-49).

The prosecution further presented petitioner's grand jury testimony that Burden was doing homework on the night in question to impeach Burden's trial testimony. (Tr. 448-49). Petitioner's objection to the use of his grand jury testimony to impeach Burden was overruled. (Tr. 453). The prosecution also used pre-trial statements made by petitioner's mother and aunt to impeach Burden's credibility, to which there was no objection. (Tr. 464, 471).

Petitioner's aunt, Shirley Harper ("Harper"), testified at trial that she stayed at petitioner's apartment on the evening of December 26, 1998 and that petitioner did not leave the premises that night. (Tr. 476, 480). The introduction of petitioner's grand jury testimony to impeach Harper

3

was not challenged by petitioner. (Tr. 486, 487).

Petitioner testified at trial that he was not in a cab on the morning of December 27, 1998, that he did not own a gun, and that he did not own a jacket with a hood. (Tr. 521-22). He acknowledged that he had a "peach fuzz" mustache in December 1998. (Tr. 565).

The jury convicted petitioner of all charges, for which he was sentenced to concurrent prison terms of fifteen (15) years for attempted robbery in the first degree and criminal possession of a weapon in the second degree, seven (7) years for attempted robbery in the second degree and assault in the second degree, and one (1) year for criminal mischief in the fourth degree. (Resp't's Mem. of Law at 9). Petitioner timely filed a notice of appeal from his judgment of conviction.

The judgment of conviction was affirmed by the Appellate Division. People v. Benloss, 309 A.D.2d 761, 768 N.Y.S.2d 829 (N.Y. App. Div., 2d Dep't. 2003). Leave to appeal the Appellate Division's order was denied by the Court of Appeals on December 30, 2003. People v. Benloss, 1 N.Y.3d 568, 807 N.E.2d 898, 775 N.Y.S.2d 785 (2003).

Petitioner asserts that (1) the prosecution improperly impeached his alibi witnesses; (2) the prosecution failed to prove his guilt beyond a reasonable doubt as to all of the crimes charged; and (3) his sentence was excessive. On February 2, 2004, petitioner requested that the Court hold his petition in abeyance pending the outcome of his forthcoming application for a writ of error coram nobis.

III. Application for Writ of Error Coram Nobis

On direct appeal, petitioner contended that the evidence was insufficient to support his conviction. Benloss, 309 A.D.2d at 761. The Appellate Division held that petitioner had failed to preserve the issue for appellate review and that, in any event, the evidence was legally sufficient

to establish his guilt beyond a reasonable doubt. Id. Petitioner now intends to file an application for a writ of error coram nobis in state court, presumably in an effort to exhaust the unpreserved issue regarding the allegedly insufficient evidence. However, the New York Court of Appeals has approved use of the writ only for a claim of ineffective assistance of counsel. People v. Bachert, 69 N.Y.2d 593, 599, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987); see also Aparicio v. Artuz, 269 F.3d 78, 87 (2d Cir. 2001); Jelinek v. Costello, 247 F. Supp. 2d 212, 256 (E.D.N.Y. 2003). Since petitioner does not claim that his appellate counsel was ineffective, his request to hold his habeas petition in abeyance is DENIED.

IV. Standard for Habeas Corpus Review

A. General Principles

A petitioner in custody pursuant to a judgment of a state court is entitled to habeas relief only if his detention violates the United States Constitution, federal law, or treaties of the United States. 28 U.S.C. § 2254(a) (2004). The objective of federal habeas review of state court convictions is to "assure that when a person is detained unlawfully or in violation of his constitutional rights he will be afforded an independent determination by a federal court of the legality of his detention, even though the issue may already have been decided on the merits by a state tribunal." United States ex rel. Radich v. Criminal Court of New York, 459 F.2d 745, 748 (2d Cir. 1972).

B. Exhaustion Doctrine

Generally, a petitioner must have exhausted available state court remedies before seeking federal habeas relief unless there is no state remedy or available state remedies would be

ineffective or futile to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1); <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); <u>Strogov v. Attorney General of New York</u>, 191 F.3d 188, 191 (2d Cir. 1999). However, notwithstanding the petitioner's failure to exhaust state court remedies, a federal court has discretion to deny a petition on the merits. 28 U.S.C. § 2254(b)(2).

C. Standard of Review

Pursuant to § 2254, if a petitioner's federal claims were adjudicated on the merits by a state court, a petition will not be granted unless such adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). If a state court has not adjudicated the claim "on the merits," the state court's decision is not entitled to any deference and the federal court must review the state court's disposition of the federal claim *de novo*. <u>Cotto v. Herbert</u>, 331 F.3d 217, 230 (2d Cir. 2003).

D. Habeas Review

1. Improper Cross-Examination of Alibi Witnesses

Petitioner contends that the prosecution improperly impeached his alibi witnesses through the use of extrinsic evidence. The Appellate Division held that this contention was "either unpreserved for appellate review or without merit." <u>Benloss</u>, 309 A.D.2d at 761 (internal citation omitted). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved

and is subject to federal review." Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

Petitioner alleges that the prosecution improperly referred to a television schedule that refuted Burden's testimony that she watched "I Love Lucy" on the evening of December 26, 1998. However, the trial court sustained petitioner's corresponding objection and instructed the jury to regard this line of questioning. (Tr. 448-49). Jurors are presumed to follow a judge's instructions to disregard or limit consideration of evidence. United States v. Gallo, 668 F. Supp. 736, 752 (E.D.N.Y. 1987).

Petitioner further claims that Burden and his aunt were improperly impeached by the prosecution's use of petitioner's grand jury testimony. "While a witness may not be impeached with extrinsic evidence on a collateral issue, extrinsic impeachment evidence is not collateral if it is relevant to the alibi defense and offered to disprove facts set forth by the defendant's alibi witnesses ... ." People v. Patterson, 194 A.D.2d 570, 571, 598 N.Y.S.2d 328 (N.Y. App. Div., 2d Dep't 1993) (internal citation omitted). "[E]xtrinsic evidence is not admissible if offered solely on the issue of the witness's general credibility but may be admitted to the extent that it bears on the truthfulness of the alibi if it is 'used to challenge the validity of the alibi, a material issue in the case.'" Id. (quoting People v. Knight, 80 N.Y.2d 845, 847, 587 N.Y.S.2d 588 (1992)).

Here, the prosecution used petitioner's grand jury testimony that Burden was doing homework on the evening of December 26, 1998 to refute the credibility of Burden, who testified at trial to the contrary. (Tr. 449-53). Furthermore, the prosecution used petitioner's grand jury testimony to refute Harper's testimony regarding the time that petitioner went to Old Navy on

December 26, 1998 and for whom he prepared food on that evening. (Tr. 476-80). Assuming, without deciding, that petitioner's grand jury testimony on these subjects was collateral and thus inadmissible, petitioner was not deprived of due process.

For petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. United States v. Agurs, 427 U.S. 97, 108 (1976). The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.'" Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414–15 (5th Cir. 1982)). Since petitioner's grand jury testimony regarding Burden's homework, the time that he went to Old Navy on December 26, 1998, or for whom he prepared food that evening was crucial or highly significant, petitioner was not denied a fundamentally fair trial.

2. Insufficiency of the Evidence

Insofar as Petitioner alleges that the prosecution failed to prove his guilt beyond a reasonable doubt as to all of the crimes charged, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir.

1997).

This court may not review a state prisoner's federal claims if those claims were not preserved in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Upon petitioner's direct appeal, the Appellate Division held that:

> The defendant failed to preserve for appellate review his contentions as to the legal sufficiency of the evidence of his guilt of the crimes of assault in the second degree and criminal possession of a weapon in the second degree. In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish beyond a reasonable doubt that defendant's identity and guilt of all the crimes of which he was convicted.

Benloss, 309 A.D.2d at 761. Where, as here, the state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996). Petitioner has demonstrated neither cause for his default nor that a fundamental miscarriage of justice will result from the failure to consider this claim.

3. Excessive Sentence

Petitioner contends that his fifteen (15) year sentence is harsh and excessive, and should be modified in the interests of justice. A challenge to the term of a sentence is not a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Petitioner was convicted of: (1) two Class C felonies, attempted robbery in the first degree,

9

N.Y. Penal Law §§ 110.05, 160.15 (McKinney 2004), and criminal possession of a weapon in the second degree, id. § 265.03; (2) two Class D felonies, attempted robbery in the second degree, id. §§ 110.05; 160.10, and assault in the second degree, id. § 120.05; and (3) the Class A misdemeanor of criminal mischief in the fourth degree. Id. § 145.00.

Where, as here, the individual is a prior felony offender, New York state law permits a maximum term of fifteen (15) years imprisonment for Class C felonies, id. § 70.06(3)(c), a maximum term of seven (7) years for Class D felonies, id. § 70.06(3)(d), and a maximum term of one (1) year for Class A misdemeanors. Id. § 70.15(1). Since petitioner's sentences fall within these statutory ranges, his challenge to the term of imprisonment is not cognizable.

V.  Conclusion

Based upon the foregoing, the petition for a writ of habeas corpus is DISMISSED in its entirety. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge
Dated: May 5, 2005
Central Islip, New York